698 So.2d 886 (1997)
Theresa GIRTEN, Appellant/Appellee,
v.
Roberto ANDREU, Appellee/Appellant.
Nos. 96-3032, 96-641.
District Court of Appeal of Florida, Third District.
August 20, 1997.
Rehearing Denied September 24, 1997.
*887 Lauri Waldman Ross, Miami, for appellant/appellee.
Richman, Greer, Weil, Brumbaugh, Mirabito & Christensen and M. Margaret Haley and Bruce Christensen, Miami, for appellee/appellant.
Allison Doliner Hockman, Coral Gables, for Florida Association for Women Lawyers as amicus curiae.
Before JORGENSON, SHEVIN and SORONDO, JJ.
SHEVIN, Judge.
Theresa Girten ["mother"] appeals a final judgment of paternity asserting error to the portions of the judgment ordering that the child's surname be changed and denying her petition for child support retroactive to the child's date of birth. Dr. Roberto Andreu ["father"] appeals the court's order awarding the mother her total attorney's fees and costs. This court consolidated the appeals. We affirm the judgment in part, reverse in part, and remand. We affirm the fees and costs award.
The mother gave birth out-of-wedlock to a child on October 23, 1993. The child's surname on her birth certificate is the mother's surname, Girten. The mother filed a paternity action seeking, inter alia, child support and other expenses. The father petitioned the court to change the child's surname to his surname, Andreu.
The record demonstrates that the father has played an integral and active role in the child's life and has undertaken to provide financially for the child since birth. We are not unmindful that the father has achieved a strong positive bond with the child, and we are hopeful that this relationship continues throughout their lifetimes.
*888 After a non-jury trial, the court entered a final judgment determining paternity, awarding the mother primary residential custody, establishing a visitation schedule, changing the child's surname to Andreu, and awarding child support but declining to order the support retroactive to the date of the birth. The court also ordered the father to pay all of the mother's attorney's fees and costs.
We reverse that portion of the judgment that changes the child's surname from Girten to the father's surname, Andreu. The mere fact that paternity has been established does not automatically entitle the father to insist the child be given his surname. Durham v. McNair, 659 So.2d 1291 (Fla. 5th DCA 1995). This notion harkens back to outdated societal concepts of legitimacy, morality, and inheritance. Instead, "[t]he standard to [be] applied in changing a child's name is the best interest standard." Levine v. Best, 595 So.2d 278, 279 (Fla. 3d DCA 1992)(emphasis added). "To change the name of a [child] ... is a serious matter, and such action may be taken only where the record affirmatively shows that such change is required for the welfare of the [child]." Lazow v. Lazow, 147 So.2d 12, 14 (Fla. 3d DCA 1962)(emphasis added). The record in this case demonstrates that the court abused its discretion in ordering the name change. The only evidence presented by the father regarding the name change was his desire that the child bear his surname,[1] and his concern that the use of the mother's surname would allow the mother greater influence over the child. This testimony falls far short of the required showing of the best interest of the child standard and cannot affirmatively support the court's ruling.
The party seeking the name change bears the burden of proof, and the court's decision must be based on "some evidence other than the parties' conclusory assertions appearing in the record before us ..." Durham, 659 So.2d at 1292(quoting Collinsworth v. O'Connell, 508 So.2d 744, 747 (Fla. 1st DCA 1987)). Having fallen short of carrying this burden, the father's name-change request must fail. To embrace the father's position that a name change was required based on "custom" would be misguided. We prefer to follow the numerous jurisdictions that have rejected this gender-based custom, perhaps best stated by the Ohio Supreme Court in Bobo v. Jewell, 38 Ohio St.3d 330, 528 N.E.2d 180, 185 (1988)(emphasis added): "In these times of parental equality, arguing that the child of unmarried parents should bear the paternal surname based on custom is another way of arguing that it is permissible to discriminate because the discrimination has endured for many years. "We therefore reverse the portion of the judgment ordering the name change and remand for the issuance of an order reinstating the child's surname to Girten.
Turning to the issue of the retroactive child-support award, we further find that under this court's pronouncements in Coleman v. Mackey, 424 So.2d 170 (Fla. 3d DCA 1983), and Mason v. Reiter, 564 So.2d 142 (Fla. 3d DCA 1990), the trial court abused its discretion in denying the mother's claim for retroactive support and the father's claim for retroactive credits. "[T]he child's needs begin at birth .... [and] the father presented no evidence which would prevent an award of past child support." Mason, 564 So.2d at 144 (citation omitted). The portion of the judgment declining the retroactive support is therefore reversed. On remand, the court shall calculate the support due after allowing the father a credit for sums he voluntarily paid during that period of time.
In addition, we affirm the fee award ordering the father to pay the mother's fees. Although we agree with the trial court's declaration that the total fees and costs expended in this case, by both parties, are "shocking," we can find no abuse of discretion in the award. The mother met her burden of substantiating the award by competent evidence, Patterson v. Cuervo, 683 So.2d 205, 206 (Fla. 3d DCA 1996), and the court properly considered all the factors necessary to "provide justice and ensure equity between the parties." *889 Rosen v. Rosen, 696 So.2d 697, 700 (Fla. 1997). As stated in Rosen, "it is not necessary that one [party] be completely unable to pay attorney's fees for the trial court to require the other [party] to pay those fees." Rosen, 696 So.2d at 699.
Based on the foregoing reasoning, we reverse that portion of the judgment granting the father's requested name change and denying the mother's retroactive support request, and remand for further proceedings consistent with this opinion. The fees and costs award is affirmed.
Judgment affirmed in part, reversed in part, and remanded. Fee award affirmed.
JORGENSON, J., concurs.
SORONDO, J., specially concurs.
SORONDO, Judge (specially concurring).
I agree with the majority on the disposition of this case and write separately only to comment on the subject of the attorneys' fees.
The majority opinion characterizes the amount of attorneys' fees in this case as "shocking." It gravely understates the reality. Legal fees for Ms. Girten are approximately $45,290. Dr. Andreu has paid his own attorneys approximately $120,000. These fees have been generated in a paternity suit where the issue of paternity was uncontested.[2]
The issues addressed in the majority opinion were the only significant issues at trial. Thus the trial of the name change and child support issues generated combined attorneys' fees in excess of $165,290.[3] This does not include appellate attorneys' fees and costs, consequently, it is entirely possible that when all is said and done the combined legal fees in this case will exceed $200,000 and the total fees and costs could exceed one-quarter of a million dollars. In my view these amounts exceed the majority's description of "shocking" and are better characterized as "unconscionable."[4]
Rule 4-1.5(a)(1) of the Rules Regulating the Florida Bar reads, in pertinent part, as follows:
A fee is clearly excessive when:
(1) after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee exceeds a reasonable fee for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the attorney;
Section (b) identifies the factors to be considered in determining a reasonable fee. Most significant in this case:
(1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(4)the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained.
A review of these criteria can lead to no conclusion other than that fees in this case, particularly those paid by Dr. Andreu to his lawyers, have been grossly excessive.
JORGENSON, J., concurs.
NOTES
[1] Q. You have asked the Court to designate your surname as the child's surname. Tell the Court why.

A. Because I'm the baby's father and customarily children are named after their father. (R. Vol. V at 59)(emphasis added).
[2] Ms. Girten filed a paternity suit before her daughter was born. She gave birth on October 23, 1993. Dr. Andreu requested proof of his alleged paternity by way of DNA testing. The testing began in November 1993. On February 23, 1994 he executed a stipulation of paternity and on March 29, 1994 the parties entered into a final agreement on custody and visitation.
[3] Costs for Ms. Girten and Dr. Andreu were $11,812.87 and $22,588.91 respectively, for a total of $34,401.78.
[4] The magnitude of this injustice can only be appreciated when considered in light of the fact that the critical issues of paternity, primary custody and visitation were amicably resolved by the parties within 160 days of the child's birth.